UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLOREZEL F. DELISSER,<br><br>      Plaintiff,<br><br>v.<br><br>UNIVERSAL BRONZE & STEEL DOOR CO., INC. d/b/a UNIVERSAL FIREPROOF DOOR CO., INC., and ABELARDO GALICIA, *individually and in his official capacities*,<br><br>      Defendants. | Civil Case No.: 1:17-cv-01239<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Florezel F. Delisser ("Plaintiff" or "Mr. Delisser"), by and through his attorneys, hereby alleges the following against Universal Bronze & Steel Door Co., Inc. d/b/a Universal Fireproof Door Co., Inc. ("UFD") and Abelardo Galicia ("Mr. Galicia") (collectively, "Defendants"):

## INTRODUCTION

1. Plaintiff brings this action as a result of Defendants' violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and New York common laws, by virtue of Defendants' policies and practices of misclassifying Plaintiff as an "exempt" employee and not paying him all wages and overtime compensation owed and for other unlawful policies and practices.

2. Defendants improperly classified Mr. Delisser as "exempt" while consistently deducting money from his paychecks, based on the number of hours he worked.

3. Moreover, while being labeled a "manager," Mr. Delisser had absolutely no managerial authority, did not customarily direct the work of anyone, had no authority or input in

the hiring, firing, promoting or disciplining process and had absolutely no discretion, authority or control over UFD's significant functions.

4. The true managerial authority over the operation of UFD rests primarily with Christian Pacheco ("Mr. Pacheco"), the General Manager of UFD, and Mr. Galicia, the Chief Executive Officer (CEO) of UFD. It is Mr. Galicia and Mr. Pacheco who perform the traditional managerial functions for UFD: they hire, fire, promote and discipline employees, including Mr. Delisser, they open and close the store, make deposits, deal with personnel issues, keep company records, direct the work of Mr. Delisser and other employees, and respond to all employee-related issues.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*.

6. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants and Plaintiff are subject to personal jurisdiction in this district.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

9. At all relevant times, Plaintiff Mr. Delisser was a resident of New York State who was employed by Defendants from September 15, 2007 to May 6, 2016.

10. At all relevant times, Plaintiff was an "employee" under both New York State and federal law.

11. At all relevant times, Defendant UFD was a New York Corporation with its principal place of business at 1171 Myrtle Avenue, Brooklyn, New York 11206.

12. At all relevant times, Defendant Mr. Galicia was a resident of New York State and was the CEO and a shareholder of UFD. Defendant Mr. Galicia controlled many or all aspects of UFD's operation, including, but not limited to, the hiring, firing, promotion, payment of wages and discipline of employees, as well as all other employment-related issues. Defendant Mr. Galicia also had the power to make decisions regarding Plaintiff's employment. As such, at all relevant times, Mr. Galicia was responsible for ensuring that employees were not subjected to unlawful conduct while employed by UFD.

13. Defendant Mr. Galicia has pierced the corporate veil by dominating the corporation by using corporate funds for his own purposes, causing Plaintiff harm in that he did not receive the wages due to him.

14. Upon information and belief, Mr. Galicia operates UFD as either an alter ego of himself, and/or fails to operate UFD as a legal entity separate and apart from himself, among other things:

    a. failing to adhere to the corporate formalities necessary to operate UFD as a separate and legally distinct entity;

    b. defectively forming or maintaining UFD by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

    c. transferring assets and debts freely as between all Defendants;

    d. operating UFD for his own benefit as the sole or majority shareholder;

  e. operating UFD for his own benefit and maintaining control over this corporation as a closed corporation or a closely controlled entity;

  f. intermingling or comingling assets and debts of his own with UFD;

  g. diminishing and/or transferring assets of UFD to protect his own interests; and

  h. other actions evincing a failure to adhere to the corporate form.

15. At all relevant times, Defendants were, jointly and individually, "employers" of Plaintiff, within the meaning of the NYLL and FLSA.

16. At all relevant times, Defendants had the power to hire, fire, and discipline Mr. Delisser, controlled the terms and conditions of his employment, and determined the rate and method of any compensation he received in exchange for his services.

17. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over employees.

18. In the alternative, Defendants constitute a single employer of Mr. Delisser.

19. At all relevant times, Defendants were an "enterprise" engaged in commerce or in the production of goods for commerce, within the meaning of the NYLL and FLSA.

20. Upon information and belief, Defendants' employees were engaged in interstate commerce, and Defendants had annual gross volume of sales and/or business in an amount that exceeded $500,000 in all relevant years.

# FACTS

21. UFD manufactures, sells, and installs residential, commercial, and industrial doors, and specializes in fireproof doors and gates.

22. UFD operates out of its principal place of business in Brooklyn, New York, which is comprised of a retail store front, office, and manufacturing warehouse.

23. Defendants employ approximately thirty two (32) individuals, seven (7) individuals work in the storefront, and twenty five (25) individuals work in the manufacturing warehouse.

24. Mr. Delisser was employed by Defendants from September 15, 2007 to May 6, 2016.

### A. Mr. Delisser Was Not Paid On A Salary Basis

25. Mr. Delisser was regularly scheduled to work Monday through Friday from 8am to 4:30pm and Saturday from 8am to 2:00pm, which amounted to 48.5 hours per week.

26. While Defendants labeled Mr. Delisser as "exempt" and purported to pay him a salary of $961.54 every week, Defendants actually paid Mr. Delisser on an hourly basis at $20 per hour for 48 hours of work each week.

27. Defendants never paid Mr. Delisser overtime and consistently failed to pay him for all time worked.

28. Defendants routinely deducted amounts from Mr. Delisser's paychecks based on the number of hours he worked.

29. If Mr. Delisser arrived to work late, left early, or worked less than his regularly scheduled work week, Defendants routinely deducted those hours from his weekly "salary," in the amount of $20 per hour.

30. For example, for work weeks ending December 24, 2010, October 12, 2012, November 2, 2012, April 19, 2013, May 3, 2013, May 10, 2013, July 5, 2013, July 12, 2013, August 2, 2013, September 13, 2013, November 15, 2013, March 28, 2014, June 27, 2014, September 5, 2014, September 26, 2014, October 17, 2014, December 26, 2014, April 3, 2015, June 12, 2015, July 17, 2015, November 20, 2015, November 27, 2015, April 29, 2016, and May 6, 2016, among many others, he made $384.52, $160.26, $641.04, $320.52, $801.30, $801.28, $480.75, $881.37, $801.29, $801.29, $480.75, $841.58, $851.34, $641.03, $801.25, $801.25, $801.29, $801.25, $881.37, $801.45, $480.75, $641.00, $641.00 and $641.00, respectively; rather than $961.54.

31. More specifically, on various checks, such as the one for week ending April 3, 2015, Defendants specifically state that Mr. Delisser is being paid $801.25 for 40 hours of work – which amounts to $20 per hour.

32. On several occasions, Mr. Delisser complained about these deductions and was told that the deductions were made because he was late to work, left work early, or did not work all of his scheduled hours in that work week.

33. These regular deductions converted Mr. Delisser from a salaried to a non-salaried hourly employee under both the FLSA and NYLL.

34. Mr. Delisser was also consistently required to perform work during his meal break, including assisting customers, responding to telephone calls, unloading delivery and supply trucks, and performing other manual labor while "eating on the go."

35. Mr. Delisser did not receive a bona fide meal break.

### B. Mr. Delisser Was Not A "Manager"

36. While Defendants labeled Mr. Delisser a "manager," Mr. Delisser had absolutely no authority to hire, fire or promote employees.

37. Mr. Delisser had no authority to give raises or discipline employees.

38. It was Mr. Galicia and Mr. Pacheco who made such decisions, including decisions related to Mr. Delisser, with absolutely no input from Mr. Delisser.

39. Mr. Delisser never supervised or directed the work of any of Defendants' employees.

40. It was Mr. Galicia and Mr. Pacheco who had supervisory authority over Mr. Delisser and all other employees.

41. It was Mr. Galicia and Mr. Pacheco who customarily controlled and directed the work of Mr. Delisser and all other employees.

42. Mr. Delisser's job duties were indistinguishable from the hourly non-exempt employees, who worked side-by-side with Mr. Delisser, performing identical work.

43. However, unlike these other hourly employees, Mr. Delisser was improperly deemed "exempt" and was not paid overtime compensation for all hours worked in excess of 40 in one work-week.

44. Upon receiving a new project, Mr. Galicia and/or Mr. Pacheco would put the new job in UFD's computer system, or they would direct Mr. Delisser or any other hourly employee to enter the job details in the computer system.

45. All of Defendants' employees, including Mr. Delisser, would routinely check the pending projects in the system and proceed to work on the ones that had the more pressing deadlines or required additional work.

46. Mr. Galicia and/or Mr. Pacheco would occasionally direct workers, including Mr. Delisser, to stop their current projects and turn their attention to a more pressing job.

47. Mr. Delisser never directed employees on what projects to work on or in which order, as such direction was given solely by Mr. Galicia and/or Mr. Pacheco.

48. Moreover, once a project was completed, it was Mr. Galicia and/or Mr. Pacheco who had to be notified of its completion.

49. Unless Mr. Delisser was personally working on a job, he was not kept informed or even made aware of the status of the projects.

50. Mr. Delisser had no authority over the operation of Defendants' business.

51. Mr. Delisser was not permitted to set any prices or offer any discounts on any of the products that Defendants manufactured, distributed, and sold, or the services that they provided.

52. Mr. Galicia and/or Mr. Pacheco opened and closed the UFD office and manufacturing warehouse, handled bank deposits, cash and check payments, and had the authority to issue discounts on Defendants' products and services.

53. Mr. Galicia and/or Mr. Pacheco supervised employees, including Mr. Delisser, for quality assurance and safety, and dealt with personnel issues including discipline, promotion, hiring, and firing.

54. Mr. Delisser's daily tasks and duties included those that all other UFD storefront non-exempt employees typically performed.

55. Like other hourly, non-exempt storefront employees, Mr. Delisser was responsible for walk in sales, providing estimates for telephone and online orders, inputting

purchase orders, ordering stock and supplies after receiving authorization to do so, and receiving deliveries, including offloading.

56. Additionally, due to his proficiency in English, Mr. Delisser was responsible for communicating with customers, contractors, and government agencies, if needed, for various UFD projects.

57. Mr. Delisser also occasionally joined offsite employees to perform manual labor on Defendants' projects.

        **C.**     **Mr. Delisser Is Entitled To His Unpaid Prevailing Wages And Supplements**

58. From September 26, 2011 to January 9, 2012, Mr. Delisser worked as a Carpenter on a project that Defendants had with Bellevue Hospital, a public hospital in Manhattan owned and operated by the New York City Health and Hospital Corporation ("Bellevue Project").

59. From March 22, 2015 to July 4, 2015, Mr. Delisser worked as a Carpenter for a project that Defendants had with Downstate Medical Center, a public hospital in Brooklyn ("Downstate Project").

60. Defendants entered into a written public works contract with the New York City Health and Hospital Corporation for the Bellevue Project.

61. Defendants entered into a written public works contact with the State of New York for the Downstate Project.

62. The contracts for both the Bellevue Project and the Downstate Project required that designated work be done by a "Carpenter," who was required to be paid at the prevailing wage of $47.65 and receive supplemental wage benefits when they performed covered work.

63. Defendants employed Mr. Delisser to work on both Defendants' public works projects and perform the designated "Carpenter" work on both the Bellevue Project and the Downstate Project.

64. The contracts required Defendant Galicia to submit weekly "Certifications" attesting that his employees, including Mr. Delisser, were paid their full weekly wages in accordance with the prevailing wages set forth in the contact.

65. Defendant Galicia falsely certified that such wages were paid to Mr. Delisser when they were not.

66. Based on the weekly payroll records – which were certified and attested to by Defendant Galicia, Plaintiff performed at least 87.5 hours of covered work on the Downstate project, earning $47.65 per hour.

67. Upon information and belief, Plaintiff performed approximately 160 hours of covered work on the Bellevue Project, earning $47.65 per hour.

68. Defendants failed to pay Mr. Delisser the prevailing wage and all wage benefits for the hours that performed covered work as a Carpenter on these public works projects.

### FIRST CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT OVERTIME VIOLATIONS
**(Against All Defendants)**

69. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

70. At all relevant times, Defendants had gross revenues in excess of $500,000.

71. At all relevant times, Defendants were employers engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

72. At all relevant times, Defendants had employed Plaintiff within the meaning of the FLSA.

73. At all relevant times, Defendants had a willful policy and practice of deducting money from Plaintiff's paychecks based on the number of hours he worked.

74. At all relevant times, Plaintiff was an hourly employee, and not paid on a "salary basis," within the meaning of the FLSA.

75. At all relevant times, Defendants had a willful policy and practice of misclassifying Plaintiff as "exempt" in order to avoid paying him overtime compensation for all hours worked in excess of 40 in one work week, in violation of the FLSA.

76. During the periods when Plaintiff worked on the Bellevue Project and the Downstate Project, Defendants failed to pay Plaintiff the overtime rate based on the prevailing wage and supplemental wage benefits, which were not included in his regular rate for purposes of calculating overtime.

77. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

78. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from the Defendants: compensation for unpaid overtime wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**NEW YORK LABOR LAW – UNPAID OVERTIME VIOLATIONS**
**(Against All Defendants)**

79. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

80. Plaintiff was employed by Defendants within the meaning of the NYLL.

81. At all relevant times, Defendants had a willful policy and practice of deducting money from Plaintiff's paychecks based on the number of hours he worked.

82. At all relevant times, Plaintiff was an hourly employee, and not paid on a "salary basis," within the meaning of the NYLL.

83. At all relevant times, Defendants had a willful policy and practice of misclassifying Plaintiff as "exempt" in order to avoid paying him for all hours worked or appropriate overtime compensation for all hours worked in excess of forty (40) hours per work week.

84. As a result of Defendants' willful failure to compensate Plaintiff at a rate of one and one-half times his regular rate of pay, for all hours worked in excess of 40 hours in a work week, Defendants have violated the NYLL Article 19 §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

85. Due to the Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants: compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs and disbursements of this action, pursuant to N.Y. Lab. Law Article 19 § 663.

### THIRD CLAIM FOR RELIEF
### NEW YORK LABOR LAW – UNPAID WAGES VIOLATIONS
**(Against All Defendants)**

86. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

87. Pursuant to NYLL § 191, Plaintiff was required to be paid ***all wages*** owed "not less frequently than semi-monthly."

88. Defendants violated NYLL § 191 by constantly failing to pay Plaintiff for all time worked and never paying him overtime compensation as required by law.

89. For example, Mr. Delisser routinely worked 48.5 hours per week but Defendants paid him $20 per hour for only 48 hours of work and never paid him overtime compensation.

90. As a result of the Defendants' willful failure to pay wages to Plaintiff, Defendants have violated, and continue to violate, NYLL § 191.

91. Due to the Defendants' violations of the NYLL § 191, Plaintiff is entitled to recover the following from the Defendants: compensation for unpaid wages; an additional equal amount as liquidated damages; prejudgment interest; and reasonable attorneys' fees, costs and disbursements of this action, pursuant to NYLL § 198.

## FOURTH CLAIM FOR RELIEF
## NEW YORK LABOR LAW – IMPROPER DEDUCTIONS FROM WAGES
**(Against All Defendants)**

92. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

93. NYLL § 193 forbids employers from making deductions from wages except in very specific circumstances, that are for the benefit of the employee, and only with the express written authorization by the employee.

94. Defendants violated NYLL § 193 by routinely making deductions from Plaintiff's wages.

95. Plaintiff never provided express written authorization for Defendants to make any deductions to his wages.

96. Defendants' deductions to wages were not made for the benefit of Plaintiff.

97. Defendants' deductions to wages were not made for any lawful reason articulated in NYLL § 193.

98. Defendants' violations of NYLL 193 was willful and intentional.

99. Due to the Defendants' violations of the NYLL § 193, Plaintiff is entitled to recover the following from the Defendants: compensation for unpaid wages; an additional equal amount as liquidated damages; prejudgment interest; and reasonable attorneys' fees, costs and disbursements of this action, pursuant to NYLL § 198.

### FIFTH CLAIM FOR RELIEF
### FAILURE TO PROVIDE FINAL WAGES
**(Against All Defendants)**

100. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

101. Pursuant to NYLL § 191(3), upon an employee's termination, by resignation or otherwise, an employer shall pay that employee's final wages not later than the regular pay day for the pay period during which the termination or resignation occurred.

102. Defendants have failed to remit all such final wages to Plaintiff.

103. As a result of the Defendants' unlawful and intentional failure to pay final wages to Plaintiff, Defendants have violated, and continue to violate, NYLL § 191(3).

104. Due to the Defendants' NYLL violations, Plaintiff is entitled to recover the following from Defendant: compensation for unpaid wages; an additional equal amount as liquidated damages; prejudgment interest; and reasonable attorneys' fees, costs and disbursements of this action, pursuant to NYLL § 198.

## SIXTH CLAIM FOR RELIEF
## NEW YORK LABOR LAW – FAILURE TO FURNISH ACCURATE EARNING STATEMENTS
**(Against All Defendants)**

105. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

106. Pursuant to NYLL § 195(3), Defendants were required to furnish Plaintiff with accurate earning statements "with every payment of wages," providing accurate information as detailed in the statute.

107. Defendants have failed to provide Plaintiff with accurate earning statements because the statements does not accurately state, among other things, the rate of Plaintiff's pay, the fact that he was paid by the hour, all deductions, the overtime rate of pay, the number of regular hours worked and the number of overtime hours worked in the pay period.

108. Defendants' failure to furnish accurate earning statements has occurred on at least 25 separate occasions.

109. Defendants' failure to furnish such earning statements was willful and intentional.

110. As a result, Defendants are liable to Plaintiff for statutory damages as set forth pursuant to NYLL § 198.

## SEVENTH CLAIM FOR RELIEF
## NEW YORK LABOR LAW – WAGE NOTICE VIOLATIONS
**(Against All Defendants)**

111. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

112. Pursuant to NYLL § 195(1), Defendants were required to provide Plaintiff with a "Notice of Pay Rate" within the first ten days of his employment, and on or before February 1st of each year, listing detailed information as specified in the statute.

113. Defendants are also required to maintain signed and dated acknowledgements of the receipt of such Notices for at least six (6) years.

114. Defendants have never provided any such Notices to Plaintiff.

115. Plaintiff has never signed or acknowledged the receipt of any such Notices because none have ever been provided to him.

116. Defendants' failure to provide such Notices was willful and intentional.

117. As a result, Defendants are liable to Plaintiff for statutory damages as set forth pursuant to NYLL § 198.

**EIGHTH CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(Against All Defendants)**

118. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

119. Defendants entered into a written public works contract with the New York City Health and Hospital Corporation for the Bellevue Project.

120. Defendants also entered into a written public works contact with the State of New York for the Downstate Project.

121. Defendants employed Mr. Delisser to work on the Bellevue Project as a Carpenter from September 26, 2011 to January 9, 2012.

122. Defendants employed Mr. Delisser to work on the Downstate Project as a Carpenter from March 22, 2015 to July 4, 2015.

123. The contracts required that Defendants pay Plaintiff the prevailing wage of $47.65 per hour and supplemental benefits when he performed covered work as a Carpenter.

124. Indeed, the contracts required Defendant Galicia to submit weekly "Certifications" attesting that his employees, including Mr. Delisser, were paid their full weekly wages in accordance with the prevailing wages set forth in the contact.

125. Defendant Galicia falsely certified that such wages were paid to Mr. Delisser when they were not.

126. Defendants' promise and agreement to pay prevailing wages and supplements was for the benefit of Plaintiff, and other workers furnishing labor on the public works projects. Therefore, Plaintiff is a beneficiary of Defendants' promises.

127. Plaintiff did perform the Carpenter work that was covered under the public works contracts.

128. Based on the weekly payroll records – which were certified and attested to by Defendant Galicia, Plaintiff performed at least 87.5 hours of covered work on the Downstate project, earning $47.65 per hour.

129. Upon information and belief, Plaintiff performed approximately 160 hours of covered work on the Bellevue Project, earning $47.65 per hour.

130. Despite Defendant Galicia's false certifications, Defendants willfully failed to pay Plaintiff the required prevailing wages and supplemental benefit for all hours worked as required by the contracts.

131. By reason of its breach of both public service contracts, Defendants are liable to Plaintiff for the payment of wages at the legally required hourly prevailing wage rate, along with supplemental benefits, interest, costs and attorneys' fees.

## NINTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT
### (Against All Defendants)

132. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

133. At all relevant times, Plaintiff was not paid the appropriate wages, including regular, overtime, and prevailing wages, for all time that he worked.

134. Defendants retained the benefit of Plaintiff's uncompensated work under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits without paying for their value.

135. Indeed, Defendants even falsely certified and attested to Plaintiff receiving all wages that he was entitled, while intuitionally and willfully retaining such benefits for themselves.

136. Consequently, Defendants were unjustly enriched by requiring Plaintiff to work for hours for which he was not properly compensated.

## TENTH CLAIM FOR RELIEF
## CONVERSION
### (Against All Defendants)

137. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

138. The amounts which Defendants failed to pay or underpaid Plaintiff constituted wages which Plaintiff has earned.

139. Plaintiff has the right to possess his earned wages.

140. However, Defendants have maintained, and continue to maintain, dominion over those wages, in derogation of Plaintiff's rights.

141. Defendants' interference with wages rightfully belonging to Plaintiff was intentional and without authority.

142. Due to the Defendants' conversion of his property, Plaintiff is entitled to recover damages from Defendant for his unpaid wages.

## ELEVENTH CLAIM FOR RELIEF
## PIERCING THE CORPORATE VEIL
**(Against Defendant Galicia)**

143. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

144. Defendant Galicia has exercised, and continue to exercise, complete domination of UFD with respect to the receipt and payment of monies.

145. Upon information and belief, Defendant Galicia transfers or has transferred, payments made to the corporation to his personal accounts.

146. Upon information and belief, Galicia used UFD as a vehicle for his personal business by, *inter alia*, paying personal expenses out of his business account.

147. Upon information and belief, instead of paying Plaintiff his wages, Defendant Galicia has used such transferred payments for his own purposes.

148. In exercising this complete domination of UFD and thereby depriving Plaintiff of his wages, Defendant Galicia has caused Plaintiff injury, in that he has not received all wages that he is owed.

149. Accordingly, Defendant Galicia is individually liable for Plaintiff's unpaid wages, unpaid overtime compensation, statutory damages, liquidated damages, prejudgment interest, and all other damages sought in this complaint, together with attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. An award of unpaid overtime wages to Plaintiff;

B. An award of unpaid wages to Plaintiff;

C. An award of unpaid prevailing wages and supplemental wage benefits to Plaintiff;

D. An award of liquidated damages to Plaintiff;

E. An award of statutory damages to Plaintiff under NYLL § 198 (1-d) for failure to provide accurate earning statements;

F. An award of statutory damages to Plaintiff under NYLL § 108 (1-b) for failure to provide a Notice of Pay Rate;

G. An award of prejudgment and post-judgment interest to Plaintiff;

H. An award of reasonable attorneys' fees and costs and expenses of this action; and

I. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: March 3, 2017

**FARUQI & FARUQI, LLP**
By: */s/ Innessa S. Melamed*
Innessa S. Melamed (IM-2886)
685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: imelamed@faruqilaw.com

*Attorneys for Plaintiff*